GEORGE R. BRISTOR, Respondent, *v.* STEPHEN H. BURR et al., 120 427|
Appellants.                                                     151 496|

Possession is presumptively the relation assumed to premises by a party
who lawfully enters upon them as a place of abode, and occupies them
as such.

Where, pursuant to the rules and regulations of the "Methodist Episcopal
Church of the United States," a minister is placed by a conference of
that denomination in charge of a local church belonging to it, no rela-
tion of master and servant exists between the church or its trustees and
the minister.

Where a minister, so assigned, is provided with a parsonage, rented for
the use of the local church, no other relation than that of possession is
consistent with the use and enjoyment of the premises.

One having the legal right to the possession of premises, in the actual
possession of another, is not justified in entering and forcibly expelling
the latter, and for so doing he is liable.

Plaintiff, a member of a conference of said Methodist Episcopal Church,
was stationed by the conference as a preacher at S. V., and continued
to preach in that place, occupying a parsonage rented by or on behalf
of the local church for its minister and furnished to him as a place of
residence for himself and family, until, in accordance with the rules and
discipline of said denomination, he was suspended from all ministerial
services and church privileges.    The defendants thereafter forcibly
ejected the plaintiff from the parsonage.    In an action to recover dam-
ages for the assault and eviction, the trial court charged that the eviction
was unlawful and that, upon that branch of the case, the question for
the jury was one of damages only.    *Held*, no error.

(Argued April 22, 1890 ; decided June 3, 1890.)

APPEAL from judgment of the General Term of the Supreme
Court in the second judicial department, entered upon an
order made December 13, 1887, which affirmed a judgment
in favor of the plaintiff entered upon a verdict.

The nature of the action and the facts are sufficiently stated
in the opinion.

*Garrett Z. Snider* for appellant.    Had the Ladies' Guild of
of the M. E. Church attempted to use the money collected by
them for any other purpose than payment of the parsonage

rent, they would have rendered themselves liable to the trustees. (*Rector* v. *Crawford,* 43 N. Y. 476 ; *Baptist Church, etc.,* v. *Pryor,* 23 Hun, 271.) The defendants, Burr, Van Houten, Smith, Tenure and Onderdonk, were at the time in question not · only the acting but the legal trustees of the M. E. Church. · (Laws of 1875, chap. 79, § 2 ; *Isham* v. *Trustees, etc.,* 63 How. Pr. 465 ; *F. R. P. Church* v. *Bowden,* 10 Abb. [N. C.] 1 ; Code Civ. Pro. § 1948; *Concord Society* v. *Stanton,* 38 Hun, 1 ; Laws of 1813, chap. 60, §§ 3, 4, 87.) The plaintiff was not a tenant of the parsonage. His occupation was that of a servant or licensee. (*People* v. *Annis,* 45 Barb. 304 ; *Hayward* v. *Miller,* 3 Hill, 90 ; *Kerrains* v. *People,* 60 N. Y. 222; *Hanford* v. *People,* 7 Wkly. Dig. 528 ; *Comstock* v. *Dodge,* 43 How. Pr. 97, 106 ; *People* v. *Fields,* 1 Lans. 222 ; *Jackson* v. *Babcock,* 4 Johns. 418 ; *Ives* v. *Ives,* 13 id. 235.) The fact that plaintiff continued in possession of the parsonage for some weeks after his suspension did not change the character of his holding from that of a servant or licensee to that of a tenant. (*Doyle* v. *Gibbs,* 6 Lans. 150.) The trial judge, instead of deciding as matter of law that " this eviction was illegal " should have permitted the jury to find the facts upon which only such conclusion of law could be founded. (*Hanford* v. *People,* 7 Wkly. Dig. 528 ; *Kerrains* v. *People,* 60 N. Y. 222.)

*William J. Groo* for respondent. The appeal being from a judgment rendered on a verdict of a jury, and no order denying a motion for a new trial having been made or appealed from, the facts in the case are settled and cannot be reviewed. (*T. A. R. R. Co.* v. *Ebling,* 100 N. Y. 98; Code Civ. Pro. § 1337.) In every instance the question, to the ruling on which exceptions was taken, called for a conclusion, or unexpressed thought of the witness, or the interpretation by him of a written rule, or the testimony sought to be elicited was subsequently introduced without objection, so that the defendants were in no case prejudiced, and such exceptions cannot benefit the appellants on this appeal. (*Tenney* v.

*Berger*, 93 N. Y. 524; *Thorn* v. *Turck*, 94 id. 90; *Story* v. *Williamsburgh*, 95 id. 474; *People* v. *Noelke*, 29 Hun, 461; *Daly* v. *Byrne*, 77 N. Y. 182; *Schile* v. *Brokhahus*, 80 id. 614; Baylies on N. T. & App. 175, 177, 286.) Assuming that the defendants were trustees as claimed, and that the relation of master and servant did exist down to the time in January when plaintiff was suspended, and his employment thus ceased, the fact that he was suffered by the defendants to remain in this house for two months created a tenancy. (*People* v. *Annis*, 45 Barb. 307.)

BRADLEY, J. The action was brought to recover for an alleged assault upon and forcible eviction of the plaintiff from a house in which he was residing, and for the alleged conversion of certain of his personal property then in the house at Spring Valley in the county of Rockland. The plaintiff was a member of the Newark Conference of the Methodist Episcopal Church, by which he was stationed as a preacher in March, 1885, at Spring Valley, and continued to preach in the church at that place until the 15th of January, 1886, when he was suspended from all ministerial services and church privileges. This was done in accordance with the rules and discipline of the Methodist Church, and was effectual as a suspension until the then next annual conference in March following. From the time he went to that place to preach, the plaintiff, with his family, resided in a house which had, for several years, been occupied by the Methodist ministers as a parsonage. On March 17, 1886, the defendants forcibly ejected the plaintiff from the house. It is of that act, and the alleged conversion of his goods then in the parsonage, that the plaintiff complains. The trial court held, as matter of law, and instructed the jury, that the eviction of the plaintiff was illegal; and that, upon that branch of the case, the question was one of damages only, for them to determine. And upon the exception to that instruction and exception to the refusal of the court to charge and submit to the jury, as requested by the defendant's counsel, certain propositions bearing upon

that subject, arise the main questions presented for consideration. They pertained, not only to the relation of the plaintiff to the premises, but to the persons assuming to act as trustees of the church, and to the right of the trustees to assume any control of the parsonage.

Although it was not directly proved that the Spring Valley church was a corporation, it may, from what did appear, be inferred and assumed that it was such, as no question was raised to the contrary. The temporalities belonging to the church were under the control of the trustees. (Laws of 1813, chap. 60, § 4.) The parsonage was owned by the Mutual Life Insurance Company, and was held for a parsonage under a demise from that company, and, whether it was rented to the trustees or to a society known as the Ladies' Guild, was one of the questions upon which evidence was given. While the defendants contended that the church or the trustees of it, as such, were the tenants of the insurance company, it was claimed on the part of the plaintiff that such society rented the premises, and, that it was not within the control of the trustees. If this society could be treated as an independent one, outside of the authority of the church, and the fact as to where the tenancy from the insurance company was located became material, there would, upon the evidence, have been a question for the jury. It is, at least, very questionable whether that society could be treated otherwise than as an instrumentality within the church organization to aid in the accomplishment of its legitimate objects, and for that purpose a mere agency of the religious corporation. In the view taken of the case, the determination of that question does not, nor does the official character of those defendants, who assumed to act as trustees in what they did, seem to be essential here for consideration.

It sufficiently appears by the record before us to indicate that an unfortunate controversy arose in the church and congregation, and that there was a want of that generous christian spirit which should characterize the action of religious societies. But it is not the province of the court to deal with

those considerations. It is the legal aspect only of the situation which can have treatment here.

When the plaintiff went to Spring Valley pursuant to the direction of the conference to perform the services as minister of the church there, the house was furnished to him as a place of residence. He lawfully went into occupancy of the parsonage. If that occupancy was the actual possession of it by him, at the time of his eviction, the defendants were chargeable with liability for assaulting and forcibly expelling him from the house. And this was so, irrespective of the mere right to the possession, as in that case there was no justification for the application of such force to eject the plaintiff, although the defendants, as trustees, may have had the right to reduce the premises to possession by means of legal process and proceedings. (*Parsons* v. *Brown*, 15 Barb. 590; *Bliss* v. *Johnson*, 73 N. Y. 529; *McMillan* v. *Cronin*, 75 id. 474.) It is, however, contended, on the part of the defendants, that the plaintiff was a mere servant of the church, and that in that relation only he resided in the house. If that were so, and if the trustees, as lessees of the insurance company, had the control of the house, the plaintiff had no possession of it, and the trustees had the right to remove him from it, and on his refusal to go to use all the force essential to do so. In such case the possession would be theirs and not his. (*Haywood* v. *Miller*, 3 Hill, 90; *Comstock* v. *Dodge*, 43 How. 97; *Kerrains* v. *People*, 60 N. Y. 221.) But it is difficult to see that the relation of master and servant existed between the trustees or the church they represented and the plaintiff. It does not appear that he was hired by that religious corporation, or that it assumed any legal obligation to pay him for his services as minister. He was placed there by the conference pursuant to the regulation and discipline of that church denomination, and no contractual relation existed between the Spring Valley church and the plaintiff. (*Landers* v. *F. S. M. E. Church*, 97 N. Y. 120.) This church being subject to such disciplinary regulations, had not within itself legitimately the power to deny to the plaintiff, when so stationed there, the

right to exercise his ministerial duties or to exclude him from its church edifice devoted to that service. (*People ex rel. v. Conley*, 42 Hun, 98.) This it seems is deemed essen- tial to the maintenance of the system of church govern- ment and its integrity. And to assure the application of its property and revenues to the uses of the church and purposes connected with it, the statute has prohibited their diversion to other objects. (Laws of 1875, chap. 79, § 4.) The articles of the discipline of the Methodist Episcopal Church were put in evidence but are not set forth in the record. It may be assumed that they furnished no aid to the defendants in their bearing upon the relation between the local church and its minister. While the church could not itself, through its own officers, exercise power over its minister, it was not without the means of relief from his ministrations when for sufficient cause they should become otherwise than religiously fit for or satisfactory to the congregation. This relief, for some reason of no concern here, was accomplished through the constituted authority. Whether his suspension would effectually result in the severance of the plaintiff's relation as the minister of this church, was dependent upon the action of the annual conference, which was then to go into session in the latter part of March. This was the situation at the time of his eviction from the parsonage. It evidently was contemplated that when he ceased to be the minister of the church he would leave the parsonage. But in the occupation of the house his relation was not that of a servant of the church or trustees in the sense sought to be applied, to render him a trespasser on his refusal to leave it. No other relation than that of possession was consistent with the use and enjoyment of it as a parsonage in view of his duties as pastor, which are not supposed to be wholly discharged in the public services at the church. Otherwise, his occupancy and its privileges would be at the will of the trustees, and he be liable, or might be subjected to intrusion at their pleasure.

There appears to have been nothing, so far as appears in the circumstances under which he went into the house or in

his relation to the church or its trustees, which so qualified his occupancy as to render it otherwise than possession by him. This is presumptively the relation assumed to premises by a party who lawfully enters upon them as a place of abode and occupies them as such; and any less right than that which possession furnishes is dependent upon some understanding, express or implied, denying such relation. None appears in this case so qualifying the character of the occupancy of the plaintiff. And he had the right to protection against eviction by violence without the aid of legal process. It is unnecessary to consider the question whether he was a tenant at will and entitled to a month's notice, or whether legal proceedings may have been effectually taken with a shorter or without any notice for his removal.

In view of the fact that the plaintiff was in actual possession of the house at the time in question, the use of the force used by the defendants to expel him from the house was without justification.

Whether the plaintiff had established his alleged claim for the conversion of the property, was treated as a question of fact, which was submitted to the jury. We do not understand that any question of law was raised by any exception bearing specially upon this branch of the case. Nor is it seen that there was any error in leaving that question to the jury.

No other exceptions seem to require consideration.

The judgment should be affirmed.

All concur, except FOLLETT, Ch. J., dissenting.

Judgment affirmed.