PLINY S. LOBDELL v. GEORGE E. KEENE.[1]

December 20, 1901.

Nos. 12,829—(116).

Forcible Entry and Unlawful Detainer.
    The object and purpose of the legislature in the enactment of the forcible entry and unlawful detainer statute was to prevent those claiming a right of entry or possession of land adversely held from redressing their own wrongs by entering into possession in a violent and forcible manner.

Effect of Appeal from Judgment.
    An appeal by defendant (a proper supersedeas bond being filed) from a judgment in forcible entry and unlawful detainer proceedings not founded on a written lease, the terms of which have expired, awarding possession of the premises involved to the plaintiff therein, stays all proceed-

[1] Reported in 88 N. W. 426.

ings in the action, preserves all rights of the parties, and secures to defendant, by force of statutory provisions, the right to remain in the possession of the premises pending the appeal.

### Possession—Forcible Resistance.

Pending such appeal the owner of the property, plaintiff in that proceeding, has no right, during the defendant's mere temporary absence from the property, to take possession thereof and forcibly resist his return thereto.

### Verdict Sustained by Evidence.

Evidence examined and *held* to sustain the verdict of the jury to the effect that defendant herein by force and violence wrongfully attempted to oust plaintiff from the possession of the property involved in the above-mentioned proceedings, and that in resisting plaintiff's return thereto he wrongfully and unlawfully committed an assault and battery upon him, inflicting serious injuries to his person, and to sustain the verdict of the jury in other respects.

### Laws 1901, c. 113.

Laws 1901, c. 113, is not retroactive, and has no application to actions tried before its passage.

### Assignments of Error.

Numerous assignments of error considered, and *held* not to present reversible error.

Action in the district court for Blue Earth county to recover $15,000 damages for assault and battery. The case was tried before Cray, J., and a jury, which rendered a verdict in favor of plaintiff for $975. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*W. E. Young* and *Wm. N. Plymat*, for appellant.

*Pfau & Pfau*, for respondent.

BROWN, J.

Action for damages for assault and battery alleged to have been wrongfully and unlawfully committed upon the person of plaintiff by defendant. Plaintiff had a verdict in the court below, and defendant appeals from an order denying his motion for a new trial.

The facts are as follows: Defendant was the owner of a certain building in the city of Mankato, which he leased to plaintiff on

December 7, 1898, by written contract, for the term of one year. Plaintiff entered into the possession of the building under the lease, and continued therein until some time after the difficulty resulting in this action. At the expiration of the term of the lease the tenancy was extended by an oral agreement between the parties for a further period, but there subsequently arose a dispute between them as to the amount of rent, and as to whether plaintiff was to pay the same in advance. Defendant claimed that by the new arrangements plaintiff was to pay $25 a month in advance. Plaintiff claimed that he agreed to pay but $15 per month, and that nothing was said as to whether it should be paid in advance. Being unable to agree upon those questions, defendant, insisting upon his version of the agreement, and claiming that plaintiff had neglected and refused to pay rent as agreed upon, brought proceedings in forcible entry and unlawful detainer in the municipal court of Mankato to recover possession of the premises.

The parties appeared before the municipal court, joined issue, and the action was tried on April 4, 1900, resulting in a judgment in favor of defendant herein (plaintiff therein) for the restitution of the property. Being dissatisfied with the decision of that court, plaintiff (defendant in that proceeding) appealed to the supreme court; filing a proper supersedeas bond, with the necessary sureties, which was approved by the municipal court. The appeal was duly and regularly taken, and was pending and undetermined at the time of the difficulty between the parties hereinafter mentioned. Pending this appeal, and on April 6, 1900, defendant, apparently dissatisfied with the appeal, served written notice upon plaintiff by which he assumed and attempted to terminate the tenancy existing between the parties; fixing the date of termination as of May 13 following. Plaintiff refused to vacate the premises until his appeal had been properly heard and determined; and on May 14, during his temporary absence from the building, defendant attempted to regain possession of the same on the theory that, if he could do so peaceably, he could rightfully resist plaintiff's return thereto. It was his claim in the court below and in this court that he took possession of the premises during plaintiff's temporary absence in a peaceable manner, and that whatever he

did with respect to the matters complained of in this action was solely for the purpose of protecting the possession thus taken and his asserted right to the property, and in defending his person from a threatened assault by plaintiff in his efforts to re-enter.

The conduct of defendant in taking possession during the temporary absence of plaintiff was deliberately planned, and was accompanied, not by peaceable methods, but by force and violence. The building was occupied by plaintiff as a meat market, and he was assisted in the conduct of his business by his son. A short time prior to the efforts of defendant to take possession, plaintiff had left the building and gone to his home, leaving his son in charge of the market. Defendant had planned for a situation of this kind, and as the son, during the absence of plaintiff, stepped from the door of the building onto the sidewalk, some ten feet from the door, defendant's father, who was jointly concerned with him in taking possession, advanced to and entered the building, while defendant seized plaintiff's son and violently threw him to the ground, holding him fast, and at the same time directing his father to lock and fasten the doors of the building. As soon as his father had secured the doors, defendant informed the son, whom he held down on the sidewalk by superior force, that as defendant's father had taken possession of the building, he would release him and permit him to depart, saying to him at the same time that he could not re-enter the same. The son sent word to plaintiff of the conduct of defendant, who soon appeared upon the scene, went to the front door of the building, into which defendant had in the meantime gone by some underground passage, and demanded admittance; threatening that, if defendant did not open the door and permit him to enter, he would break it in, whereupon defendant, who was standing inside the building and at the door, drew a revolver and threatened plaintiff with bodily injury if he attempted to enter the building. This threat he uttered distinctly and positively twice. Plaintiff then armed himself with a revolver, and, with the assistance of several bystanders and a large piece of timber, succeeded in breaking in the door.

Defendant admits that he had his revolver in his hand during the time the parties were breaking in the door, and that before

plaintiff had fired, or even attempted to fire, his weapon, he deliberately fired at plaintiff, striking him in the arm; and the evidence is overwhelming that he in fact fired at plaintiff at least twice before plaintiff fired at all, striking him once in the arm and once in the breast. After this, plaintiff discharged his revolver in the direction of defendant three or four times,—not, however, hitting him. An officer, who seems to have been a passive witness to the whole affair, then interfered, and the trouble came to an end. The son, who had been forcibly prevented from returning to the building earlier in the fracas, re-entered, and plaintiff continued in possession until some time in August following. This action was brought by plaintiff to recover damages for injuries to his person resulting from the wounds inflicted on him by the shots fired by defendant, claiming in his complaint $15,000 damages. Defendant answered, setting forth his ownership of the property and his asserted right of possession, and interposed a counterclaim for damages to the amount of $16,000 for injuries alleged to have been suffered by him because of plaintiff's assault, though he had been in no manner injured.

A large number of errors are assigned in this court, but it is unnecessary to consider all of them separately. Many of them are involved in single propositions, and some need no mention at all.

1. The action was submitted to the jury by the trial judge under clear and concise instructions as to the law applicable to the issues presented by the pleadings and evidence, some portions of which are now objected to by the appellant, though no exceptions were taken in the court below. It is contended by appellant that Laws 1901, c. 113, dispensing with the necessity of taking exceptions at the trial of an action, is applicable to this case, and that he should be given the benefit of any erroneous statements of the law in the charge of the judge. We are unable to concur with appellant in this position. The action was brought and tried long before the passage of the act of 1901, the provisions of which will be searched in vain for any intimation that the legislature intended it to have a retroactive effect. In the absence of some plain expression of the legislature, a statute will ordinarily be construed as prospective, and not as retroactive. Sutherland, St. Const. § 464.

Appellant's objections to the charge of the trial court, where no exceptions were saved, cannot, therefore, be considered.

2. Defendant requested the court to charge the jury that

1. "It is established in this case that the defendant had the right to the possession of the premises in question in this action,"

2. "The defendant, being the owner of the premises and entitled to the possession thereof, had a lawful right to obtain that possession in any peaceful manner."

The court refused both requests, and the refusal is assigned as error. The court was clearly right. Plaintiff had been in possession of the premises as defendant's tenant for over a year prior to this occurrence. A controversy had arisen between them as to the terms under which he was to continue as such tenant for a further period, and that controversy had been taken into court by defendant for adjudication and determination. He instituted unlawful detainer proceedings to recover possession of the property, and had recovered judgment in that court, confirming his right; but the proceedings were still pending on plaintiff's appeal to the supreme court. In perfecting his appeal, plaintiff complied with all the statutory requirements, filing the proper supersedeas bond, and, as we understand the law, was entitled, as a matter of right, to continue in the possession of the property until the appeal was determined.

G. S. 1894, § 6119, relating to forcible entry proceedings, provides that no writ of restitution shall issue in any case for twenty-four hours, if the party against whom the judgment is rendered, or his attorney, states to the justice that he intends to take an appeal, except where the proceeding is brought upon a written lease executed by both parties, the term of which has expired. Even in that case, if defendant gives notice that he intends to appeal, before the writ of restitution can issue complainant is required to file a bond to pay all costs and damages if the defendant is finally successful. But plaintiff was not holding under a written lease, but, instead, under an oral agreement, with respect to the terms of which the parties were in dispute, and unable to agree; and that feature of the statutes has no particular application to the case. Section 6120 provides that, if either party feels aggrieved by the

verdict of the jury or decision of the justice, he may appeal upon giving bond to pay all costs, damages, and rent accruing to the party who is excluded from the possession of the property during the pendency of the appeal. Section 6121 provides that upon taking such an appeal all further proceedings in the action shall be stayed and suspended during its pendency. Section 6122 expressly provides that in case of such an appeal by defendant "the defendant shall remain in the possession of the premises until the appeal is determined."

By no process of broad interpretation or liberal construction can these provisions of the statutes be construed in harmony with appellant's contention, namely, that at the time in question he was entitled, as a matter of law and of right, to the possession of the premises; but the converse of the proposition is clear, and that he was not entitled to possession is beyond doubt.

There is no uncertainty or ambiguity in the language of the several sections of the statutes referred to. They expressly provide that the taking of an appeal shall stay all proceedings in the action, preserve all rights of the parties, and that defendant shall remain in the possession of the property until it is determined. Defendant's contention in this respect is clearly incompatible with the terms of the very law resorted to by him to determine the controversy between himself and plaintiff, and which he had invoked to secure possession of his property, and certainly not in harmony with its spirit or purpose. But if it be conceded, for the purposes of the case, that defendant's contention is sound, and that he was entitled to possession of the property, he had no right, in defiance of the law, and in contempt of the court in which his proceedings to obtain such possession were pending, to take the matter into his own hands, and by force and violence eject the plaintiff. Bristor v. Burr, 120 N. Y. 427, 24 N. E. 937.

It is true, as a general rule, that where the terms of a written lease have expired, and the tenant wrongfully holds over in defiance of the rights of the landlord, and in any case where the owner is entitled to possession, he may make peaceable entry into the property, and retain and hold the possession thus gained, and exclude the tenant's return; but such rule has no application

where the rights of the parties are in litigation and dispute; and then too, in point of fact, the entry must be a peaceable one and unaccompanied by force or violence. Fredericksen v. Singer Mnfg. Co., 38 Minn. 356, 37 N. W. 453; Mercil v. Broulette, 66 Minn. 416, 69 N. W. 218.

It conclusively appears from the evidence in this case, however, and from the testimony of defendant himself, that his acts· were not of a peaceable nature. He gained whatever possession his acts may be said to have resulted in by force and violence inflicted on plaintiff's son,· who was temporarily in charge of the property. He seized him, threw him violently to the ground, and held him there while his father entered the property and locked and bolted the doors. If this be a taking of possession of property in a peaceable manner, we are at a loss to say what would constitute a violent taking. It is what the books characterize as a "scrambling possession," and conferred no rights whatever upon defendant, and particularly no right to defend the possession thus gained by further acts of violence and force. Bowers v. Cherokee Bob, 45 Cal. 495; House v. Keiser, 8 Cal. 500; Coonradt v. Campbell, 25 Kan. 227. The rights of the parties were in no way changed or affected with respect to the possession of the property by the notice given by defendant, after the trial of the forcible entry action, for the purpose of terminating the tenancy.

The relative rights of the parties, fixed by those proceedings, and the statutes governing the same, could be changed or suspended only by a dismissal of that action, or its final determination. So long as it remained pending and undetermined, it fixed absolutely the status of the parties with respect to the right to possession of the property. The trial court was therefore right in refusing to instruct the jury that defendant had a right to possession of the property, and in refusing also to instruct that he had a right to take possession thereof peaceably, because (1) the statutes referred to gave the right of possession to plaintiff; and, (2) even if not so, the evidence is conclusive that defendant did not take possession in a peaceable manner.

3. The 21st, 25th, 26th, 27th, 28th, and 29th assignments of error refer to requests by defendant to instruct the jury, but we discover

in them no reversible error. The requests there referred to were sufficiently covered by the general charge of the court. The 24th request is irrelevant to any issue in the case, and was properly refused. The 28th and 29th requests assume facts not shown by the evidence, and were properly refused.

4. The court charged the jury, in effect, that defendant was not, under the evidence in the case, entitled to recover damages against the plaintiff. This instruction is complained of, and counsel for defendant urge with much earnestness that it was prejudicial error. We do not think so. We have recited the principal facts in the case, and it is unnecessary to restate them at any considerable length. If we are correct in holding (and we think we are) that plaintiff, by reason of the statutory provisions before referred to, was entitled to possession of the property pending the appeal, defendant was clearly the wrongdoer and aggressor from the beginning in all that took place between the parties on the day in question. He had no right to take the law into his own hands, whether peaceably or otherwise, and attempt to take a possession which the statute expressly conferred upon plaintiff. But, conceding that we are in error in this position, it is beyond question, in our judgment, that the evidence, coming from the defendant himself, is conclusive against his right of recovery against plaintiff. The manner in which he took possession of the property is perhaps best disclosed by his own evidence. He testified:

"I watched for an opportunity to get into the building when it was vacant, and hold it in that way, and that is the way I did it. When it was vacant I went into it, and got my father to go in and fasten the doors. * * * My purpose was to get peaceable possession. * * * I got my father to help me. We had some work to do round there on the sidewalk, and I told father what my plan was to get into peaceful possession, and I wanted his assistance; we would watch for a chance when Frank [plaintiff's son] had his work done that morning (he generally came out and walked * * * on the sidewalk), and that I would wait for that opportunity, and I would have him go in and shut the doors, while I talked to Frank, and that would be a good way, and it proved to be. * * * After a while I saw Frank standing outside the door on the side of the walk, and I was in my own building then, or near the door, watching for that chance, and I says: 'Now, father, you come right along, and go in and fasten the

doors.' And so I went up to Frank, and I says to him: 'Frank, I am not going to let you go back into that building again. I have taken possession myself, and as it is the only way I could get it, and * * * I am not going to let you back in there.' * * * And he seemed a little surprised, and I said: 'That is right. You need not feel hard towards me.' * * * Frank says: 'You are not going to let me go in there? Well, I will see.' And he started, and I had got between him and the door; and just as he started for the door, I was afraid he might push it in, and I took my arms and put them right round him and held him, and then * laid him down on the sidewalk. I did not try to hurt him. * * * Then we scuffled * * * and then I let him up. I says, 'The door is fastened now, and you may go'; and I got up, and he got up and started for the door, * * * and he says, 'George, I will get mad pretty soon'; and I says, 'Frank, that will not do you any good.' * * * I could not get peaceful possession of my property any other way, and I had to have it, because I had rented it. * * * I expected Mr. Lobdell, * * * I thought I could talk with him better from the inside than I could outside, and could have a better chance to argue the matter with him, * * * so I went in and down through a trap door into the cellar, and then up through into the butcher shop in that way, and presently Mr. Lobdell came up and jumped out of his cart and came up to the door and shook it, and says, 'Open the door.' I says, 'No I have taken possession of the shop myself.' He says, 'I tell you to open that door, or I will smash it in.' I says, 'No, don't go to doing anything rash. You have got your remedy. * * * Go right down and have me arrested. I am responsible for all damage.' * * * He insisted upon pounding at the door, and said he would smash it in, and I says, 'You must not smash it.' * * * I talked as calmly as I could. I wanted to talk some sense into him. He says, 'I will show you how quick I will come in,' and he started for a stick and he says, 'If you don't open the door I will smash it in.' * * * I then took out the revolver and showed it to him, and I says, 'I will defend myself if you undertake to smash in here with that timber, I can't allow that.' I says, 'You have your remedy. * * * You can go into court and you can make me pay all damages.'"

A short time after this, plaintiff armed himself with a revolver, and, with the assistance of some bystanders, broke in the door, and resumed possession of the property. During this proceeding, and in resisting plaintiff's return to the building, defendant fired the shots causing the injuries complained of. The evidence of eye witnesses flatly contradicts defendant in essential particulars, especially with reference to the shooting. The jury were fully war-

ranted in finding that defendant fired at least twice at plaintiff before plaintiff fired at all. The first shot did not hit the mark, but the second and third did.

Under this state of evidence, appearing from the defendant himself, it is contended that the court below should have submitted to the jury the question whether or not defendant was entitled to damages from plaintiff for the assault committed by him. Defendant was in no way injured, and there is no suggestion in the evidence or otherwise that he suffered any mental distress or anguish of mind, and we are at a loss to know upon what basis a recovery in his behalf could be justified. He was the aggressor and wrongdoer from the beginning, attempting violently and by force to dispossess plaintiff; taking not only the building, but possession of plaintiff's tools, fixtures, implements, and stock in trade, and striving to maintain such possession by further violence, —threatening, as the witnesses say, to kill the plaintiff if he attempted to re-enter the building. It is true that he offered to surrender plaintiff's personal effects, but that did not change the character of his prior wrongful acts. He admits himself he fired the first shot, and that he fired at least twice before plaintiff made any effort to use his weapon is overwhelmingly established by the evidence. Clearly, if the question of defendant's damages had been submitted to the jury, and they had found in his favor, even for a nominal amount, the verdict could not have been upheld for a moment. The court would have set it aside without hesitation.

Defendant's defense to the action was that he was justified in shooting plaintiff in defense of his own person from threatened injury at the hands of plaintiff. The court correctly submitted the question of self-defense to the jury, and they found against defendant. Thus it appears not only from the evidence, but from the verdict of the jury, that defendant was the wrongdoer, and unlawfully assaulted plaintiff. The jury found on all the issues in plaintiff's favor. Every fact essential to a right of recovery on the part of defendant was found adversely to him, and, even though it be conceded that the court should have instructed the jury to consider the question of his damages, the refusal to do so did not result prejudicially to his substantial rights. Every material fact

was found against him by the jury, and there remains no basis whatever upon which a verdict in his favor, even for nominal damages, could be upheld. If there ever was a case which by its circumstances was peculiarly for a jury to determine, that is this case.

The object and purpose of the legislature in the enactment of the forcible entry and unlawful detainer statute was to prevent those claiming a right of entry or possession of lands from redressing their own wrongs by entering into possession in a violent and forcible manner. All such acts tend to a breach of the peace, and encourage high-handed oppression. The law does not permit the owner of land, be his title ever so good, to be the judge of his own rights with respect to a possession adversely held, but puts him to his remedy under the statutes. As remarked by Chief Justice EMMETT in Jacobs v. Hoover, 9 Minn. 189 (204) (a case very similar to this), "Taking the remedy into one's own hands is at best an insult to the majesty of the law, and the offense is greatly aggravated whenever it is committed under circumstances evincing deliberation." We have given the record a very careful and painstaking examination in view of the earnestness of counsel for appellant in presenting his case, and find no reason for questioning the wisdom of the verdict of the jury, or the order of the learned trial judge denying a new trial.

Order affirmed.