JOSEPH MERCIL v. MICHAEL BROULETTE and Others.[1]

December 8, 1896.

Nos. 10,277—(198).

**Right to Possession—Peaceable Entry—Effect.**

If a person lawfully entitled to the possession of real property can make peaceable entry, even while another is in occupation, the entry, in contemplation of law, gives or restores him to complete possession.

**Same—Crop.**

This rule applied in a case where M., who was entitled to the possession of land which had been plowed and cultivated by B., a trespasser, for a number of years, entered upon the land in a peaceable manner in the spring of the year, and, without real opposition from B., proceeded to seed the ground, from which, in due season, a crop of grain was raised. *Held*, that M. was the owner of the grain, and entitled to the possession.

Appeal by plaintiff from an order of the district court for Polk county, Ives, J., granting a motion for a new trial. Reversed.

*A. C. Wilkinson*, for appellant.

*H. Steenerson*, for respondents.

COLLINS, J. This was an action in claim and delivery, the property in dispute being a quantity of wheat grown in 1894 on the land involved in the case of St. Paul, M. & M. R. Co. v. Broulette, 65 Minn. 367, 67 N. W. 1010, in which it was held that Michael Broulette, defendant herein, had acquired no right to or title in the land by virtue of a purchase made in 1877 of certain improvements, and a pretended

[1] Reported in 69 N. W. 218.

settlement thereon at the same time under the homestead act of the United States, but that it was, as part of its land grant, the property of the railway company, having been certified as such by the state authorities in 1889.    The appeal is from an order granting defendants a new trial after plaintiff had a verdict.

It appears that, on February 13, 1894, plaintiff entered into a contract with the railway company for the purchase of the 80 acres in question, and thereby became entitled to immediate possession of the same..    As stated in the opinion before referred to, Broulette had lived in a house on the 80 for a number of years, and had nearly, if not quite, all of it under cultivation.    He caused the greater part of the 80 to be plowed in the fall of 1893, and then moved, with a part of his family, into a neighboring village, leaving a married son (with his wife), an unmarried son, and an unmarried daughter in actual occupation of the house.    In the spring of 1894, Mercil, the plaintiff, who lived on an adjoining farm, entered upon the land, seeded that portion which had been plowed, and plowed and seeded the balance. The date of this entry is given as the month of May, while the action before referred to, brought to eject Broulette from the land, was commenced on the 4th day of that month.    A crop was raised from the seed thus planted by Mercil, but in the fall Broulette and two of his sons, these defendants, forcibly took possession of the growing grain, and harvested the same.    This action was the result.

From an examination of the evidence, and construing it most favorably for defendants, it is beyond question that plaintiff entered upon the land, and commenced to cultivate the same, peaceably and without real opposition.    Michael Broulette was then living temporarily in the village.    The married son had, with his wife, removed onto another farm, and had taken with him a part, at least, of the stock and farm machinery.    The unmarried son still occupied his father's house, but he was making no attempt to cultivate the farm, nor was any effort being made by any one to put in a crop.    Plaintiff met with no resistance when he went upon the 80 and commenced his work.    It is true that the son told plaintiff's servant, while he was at work, to go off the place, and to tell plaintiff that he was not wanted there, and that, a few days later, plaintiff was told by the son that he was forbidden to work there, and, if· he put in the grain, he would be the loser; but this was all there was in the way of op-

position to plaintiff's acts from the time he first made entry until, discovering that defendants were cutting his grain, he attempted to prevent it and to cut it himself.

It is conclusively shown from what was said and done that plaintiff did not enter upon the land, nor did he occupy it at any time, by force or strong hand. He was entitled to the possession, and the defendants were not. He had no right to make an entry with strong hand, or with a multitude of people, but he had the right to enter in a peaceable manner; and when once in, in such a manner, he was not guilty of an unlawful detainer, for nothing was done in opposition to his possession and cultivation, except in the indifferent manner we have referred to.

If possession of real property has been taken or is detained from the person entitled to it, his method of recovering or obtaining will depend upon circumstances. At common law he might use force to regain or obtain possession, but, as this led to serious breaches of the public peace, St. 5 Rich. II., c. 7, was enacted. This statute has been re-enacted in most of the states, and, in substance, is found in G. S. 1894, § 6108. It forbids entry upon lands and tenements except in a peaceable manner. But if a person lawfully entitled to possession of real property can make peaceable entry, even while another is in occupation, the entry, in contemplation of law, gives or restores to him complete possession. And it has even been held that it is not unlawful for him to resort to such means, short of the employment of force, as will render further occupation by the other impracticable. Cooley, Torts, 379–381, and cases cited. The last cited—Stearns v. Sampson, 59 Me. 568—discusses the question fully.

If, therefore, this plaintiff, being entitled to the possession of the 80, as against Michael Broulette, who was a trespasser, took possession in a peaceable manner, and held it without force or strong hand, he was the owner, and entitled to the possession, of the grain in question. As the evidence was conclusive as to the manner of his entry and subsequent possession, a verdict for the plaintiff was the only one to be returned. It was for the plaintiff, and the court below erred when granting a new trial.

The order appealed from is reversed, and the cause remanded, with instructions to enter judgment in accordance with the verdict.