686 F.2d 631
 Daniel PELLOWSKI, Deborah Pellowski, individually and as
parents and natural guardians of Jonathon
Pellowski, and Joseph Pellowski, minors, Appellees,
v.
Eugene BURKE, Michael Garvey, and Archie Smith, Appellants.
 No. 81-1933.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 11, 1982.
Decided Aug. 18, 1982.
 
 Edward P. Starr, City Atty., David W. Nord, Asst. City Atty., St. Paul, Minn., for appellants.
 Richard A. Mosman, Minneapolis, Minn., for appellees.
 Before HEANEY, ARNOLD and GIBSON,* Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 Plaintiffs Daniel and Deborah Pellowski brought this action for themselves and their two minor children, against defendants Eugene Burke, Michael Garvey, and Archie Smith, all St. Paul police officers, for violation of plaintiffs' civil rights under 42 U.S.C. §§ 1982,[1] 1983, 1985, and 1986. The case was tried before a jury, which found defendants liable under § 1983 and awarded plaintiffs $300.00 in actual damages. The jury also awarded $1,000.00 in punitive damages against each of the individual police officers. We affirm.
 
 I.
 
 2
 Plaintiffs' action arose from events surrounding their eviction from their apartment in 1977. We recount the facts as the jury could have found them, taking the view of the evidence most favorable to plaintiffs, as we are bound to do in the procedural context of this case. After moving into the apartment at # 1252 Hazelwood, St. Paul, Minnesota, in October 1976, plaintiffs encountered difficulties with the management and some of the other tenants. Plaintiffs lodged complaints with the landlord on several occasions about cleanliness and maintenance of their apartment. In turn, several tenants complained to the landlord about excessive noise from plaintiffs' apartment. On one occasion, the police were called to plaintiffs' apartment in response to a complaint about noise.
 
 
 3
 In March, 1977, the landlord instituted an unlawful-detainer action against plaintiffs for nonpayment of that month's rent. A settlement was reached, with plaintiffs agreeing to pay the rent for March and the landlord promising to inspect plaintiffs' apartment for needed repairs. During pendency of the unlawful-detainer proceeding and prior to settlement, plaintiffs received a second notice to vacate the apartment. The next month, plaintiffs paid part of the rent for April and told the landlord that, because they were short of money, he should deduct the balance of the rent from plaintiffs' damage deposit after they left the apartment.
 
 
 4
 On April 29, 1977, plaintiff Deborah Pellowski was informed by one of the landlord's property managers, Mrs. Noran, that plaintiffs had to vacate their apartment by midnight on April 30. Mrs. Pellowski informed Mrs. Noran that plaintiffs would not be able to move until May 2, when their welfare check arrived. The following day, April 30, 1977, Mrs. Noran spoke to Mrs. Pellowski several more times, inquiring again whether the plaintiffs would be out of their apartment by midnight. Shortly before 12:00 that evening, Mrs. Noran's husband appeared at plaintiffs' apartment door demanding that plaintiffs immediately vacate the premises. When plaintiffs refused to leave, the managers called the police for the purpose of removing plaintiffs from the apartment.
 
 
 5
 The police arrived at the apartment building a few minutes after 12:00 midnight on the morning of Sunday, May 1, 1977. Accompanied by the property managers, Mr. and Mrs. Noran, the defendant police officers attempted to talk with plaintiffs, who, uncertain of the officers' identity, refused to open the door to them. The defendants admitted to plaintiffs that they had no search warrant or court order authorizing them to enter plaintiffs' apartment. Acting on the advice of their attorney, whom they had called after the police arrived, plaintiffs continued to refuse to open their apartment door to either the manager or the defendant officers.
 
 
 6
 Seeking but receiving no assurance from the police officers that a forcible entry was legally proper, the extremely agitated Mr. Noran decided to take matters into his own hands. Using a pass key, he opened the door to the apartment a few inches but was restrained from proceeding any farther by a chain lock. Mr. Noran then kicked the door down while the defendant officers looked on. The officers followed the Norans into the apartment as the Norans and several persons from the apartment building began moving plaintiffs' belongings out of the apartment and onto the building's front yard. While in the apartment, one of the officers spoke over the telephone with plaintiffs' attorney, who advised the officer that the eviction was unlawful.
 
 
 7
 After they were forcibly evicted, plaintiffs stayed with Mr. Pellowski's brother until they were able to move into a new apartment. Plaintiffs subsequently brought this action against defendant police officers, alleging violation of their due-process and equal-protection rights.[2]
 
 
 8
 On appeal, defendants claim that the District Court[3] erred in holding as a matter of law that Mr. Noran had committed a crime in their presence. They also argue that there was insufficient evidence to justify submitting to the jury the question of "gross negligence" and the issue of punitive damages.
 
 II.
 
 9
 Under the common law of Minnesota, a landlord may rightfully use self-help to regain leased property from a tenant in possession if the landlord is entitled to possession and his means of entry are peaceable. Berg v. Wiley, 264 N.W.2d 145, 149 (Minn.1978); Mercil v. Brouillette, 66 Minn. 416, 69 N.W. 218 (1896). In the present case, the District Court held as a matter of law that the entry into plaintiffs' apartment was not peaceable, after having first given the following instructions to the jury:
 
 
 10
 The Plaintiffs' property rights are defined by Minnesota law. That law provides that a landlord may take possession of property from tenants who remain on that property past their right to remain there only if he enters that property without force and in a peaceable manner. Thus a tenant has a property right against such an entry. If a landlord seeks to regain property and cannot do so without force, he must use the procedures set forth in Minnesota law. Those procedures provide that he can bring an action for unlawful detainer and both the tenants and landlord will have an opportunity to present evidence to a court. If a tenant is then ordered to vacate and refuses to do so, procedures are then set out under Minnesota law which provide that the County Sheriff will remove the tenants.
 
 
 11
 Contending that the basis for the District Court's instructions was the Minnesota Supreme Court's decision in Berg v. Wiley, supra, defendants note that Berg was not decided until after the events which gave rise to the present case. From this, defendants argue that the instructions were erroneous and that the jury should not have been instructed that force cannot be used by a landlord to retake property. We cannot agree. The instructions of the District Court essentially state the common-law rule which has been the law of Minnesota since at least 1896 when the Supreme Court decided Mercil v. Brouillette, supra. In Mercil, the court stated:
 
 
 12
 (I)f a person lawfully entitled to possession of real property can make peaceable entry, even while another is in occupation, the entry, in contemplation of law, gives or restores to him complete possession. And it has even been held that it is not unlawful for him to resort to such means, short of the employment of force, as will render further occupation by the other impracticable.
 
 
 13
 66 Minn. at 418, 69 N.W. at 219 (emphasis ours).
 
 
 14
 Although the court in Berg v. Wiley, supra, ultimately departed from the common-law rule,[4] it is clear that the District Court did not rely on that aspect of the decision in formulating its instructions to the jury, if it relied on Berg at all. Under the common-law rule, as stated by the District Court, the use of force by the landlord makes an eviction unlawful[5] and gives the tenant the right to recover damages. See Sweeney v. Meyers, 199 Minn. 21, 270 N.W. 906 (1937). Here, the property manager "had no right to make an entry with strong hand, or with a multitude of people, but he had the right to enter in a peaceable manner." Mercil v. Brouillette, supra, 66 Minn. at 418, 69 N.W. at 219 (emphasis ours). The District Court, in applying the common-law rule, did not err in finding the eviction wrongful as a matter of law. And of course we ordinarily defer to the district courts on questions of the law of their own state.
 
 III.
 
 15
 The District Court also instructed the jury that, in order to establish a claim under 42 U.S.C. § 1983, plaintiffs had to show by a preponderance of the evidence that the defendants acted knowingly, recklessly, or in a grossly negligent manner to deprive plaintiffs of their constitutional rights. Defendants contend that the evidence was insufficient to justify the submission of the case to the jury under a gross-negligence standard.
 
 
 16
 At the time of the events in this case, defendant Officer Smith had been a veteran of the police department for at least six years, while defendants Officers Burke and Garvey had been with the department for two years. Each defendant testified that his police training included a study of state criminal statutes. Although defendants were admittedly unfamiliar with the specifics of landlord-tenant law, each officer was aware that the Sheriff's Department usually handled evictions and that proper legal authority was needed for the eviction of tenants. In addition, the officers made no effort to obtain instructions about the proper procedure to follow, even though they could have easily communicated with police headquarters for information. One of their supervisors, Lieutenant McDonald, testified that he knew that it was a misdemeanor, under Minnesota law, for a landlord to evict a tenant forcibly. Also, Officer Garvey was told by plaintiffs' attorney, whom plaintiffs had telephoned when the police first arrived at their apartment, that neither he nor the other officers nor the Norans had a right to enter plaintiffs' apartment by force without a court order.
 
 
 17
 When the defendant officers met the Norans at the apartment building, it was obvious to them that Mr. Noran was very angry. He was insistent that some action be taken to evict the plaintiffs immediately. The jury could have found also that it was clear that Mr. Noran would probably resort to using force to evict plaintiffs. Despite these factors, defendants made little or no effort to restrain him and stood by and watched as Mr. Noran broke down the door to plaintiffs' apartment, even though defendants admitted being unsure of who actually had the right to possession of the apartment.
 
 
 18
 Considering the evidence as presented, we cannot say that the District Court erred in submitting the question of gross negligence to the jury. Plaintiffs had a right under state law not to be evicted by force from their leased home, and that right is "property" protected by the Due Process Clause of the Fourteenth Amendment. It was for the jury, on this record, to determine the defendants' state of mind.
 
 IV.
 
 19
 Defendants' final argument on appeal is that the District Court erred in submitting the issue of punitive damages to the jury. They argue that there was no evidence of malice or ill will on the part of the defendants to justify instructing the jury on that issue.
 
 
 20
 This Court has held that "(p)unitive damages may ... be awarded in civil rights actions where the defendant exhibits oppression, malice, gross negligence, willful or wanton misconduct, or a reckless disregard for the civil rights of the plaintiff." Guzman v. Western State Bank of Devils Lake, 540 F.2d 948, 953 (8th Cir. 1976) (award of punitive damages against seller and bank for ex parte attachment and seizure of plaintiffs' mobile home and automobile). The jury apparently found that the defendant officers' conduct constituted, at a minimum, gross negligence, and we have determined that there was sufficient evidence for a jury reasonably to make such a finding. The police officers failed to act while a misdemeanor was being perpetrated in their presence, and the jury found that that inaction deprived plaintiffs of property rights guaranteed by the Constitution. While, in viewing the evidence introduced at trial, we might think that defendants' conduct did not warrant an award of punitive damages, we may not substitute our views for those of the jury.[6] "The allowance of such damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact." Lee v. Southern Home Sites Corp., 429 F.2d 290, 294 (5th Cir. 1970). Juries are well suited to make this kind of moral judgment.
 
 
 21
 The judgment is affirmed.
 
 
 22
 JOHN R. GIBSON, Circuit Judge, concurring in part and dissenting in part.
 
 
 23
 This case presents troublesome questions relating to punitive damages in 42 U.S.C. § 1983 actions. This court has discussed these issues in Wade v. Haynes, 663 F.2d 778 (8th Cir. 1981), cert. granted sub nom. Smith v. Wade, --- U.S. ----, 102 S.Ct. 1968, 72 L.Ed.2d 439 (U.S.1982), and I am in agreement with the views expressed by Senior Judge Floyd R. Gibson in his dissenting opinion that actual malice should be required as a foundation for punitive damages.
 
 
 24
 In this case the issue of punitive damages was submitted with an instruction that required a finding that the conduct of the defendants was malicious, wanton and oppressive. Defendants did not object to this instruction and on appeal argue that as a matter of law there is no evidence to support an award of punitive damages. In my opinion the evidence fails to support a jury finding of malice on the part of defendants Burke and Smith so as to subject them to punitive damages.
 
 
 25
 I feel that the eviction and failure to ascertain the legal propriety of the landlords' actions, without more, do not show spite or ill will sufficient to constitute malice on the part of the police officers. They were simply part of the pattern of events involving both the officers and the representatives of the landlords, and do no more than support the award of actual damages against the police officers.
 
 
 26
 The spite or ill will necessary to constitute malice was described in Mrs. Pellowski's testimony concerning three statements that were made in her presence. She said someone threatened to throw Mr. Pellowski through the window, but she did not make clear whether this statement was made by one of the officers or by the representatives of the landlords. Mrs. Pellowski also stated that one of the police officers referred to plaintiffs as "welfare bums." She was confident that two officers were in the room at the time, but the officers, and the speaker were not identified.[1] This evidence, without identification of the speaker, fails to connect defendants as wrongdoers. Vetters v. Berry, et al., 575 F.2d 90, 96 (6th Cir. 1978), or to show personal participation in the wrongful acts, or actual or constructive knowledge of the acts and acquiescence in them. Fisher v. Volz, 496 F.2d 333, 349-50 (3d Cir. 1973). The testimony concerning these two statements, therefore, fails to identify a defendant or defendants to subject these persons to punitive damages.
 
 
 27
 Mrs. Pellowski testified that the first police officer to enter the apartment profanely asked whether the Pellowskis were going to move their furnishings or whether the officers had to. The evidence further established that this first police officer in the room was defendant Garvey. When this evidence is considered in the light most favorable to plaintiffs, I feel that there is a sufficient showing of malice to make a submissible issue of punitive damages with respect to defendant Garvey.
 
 
 28
 Accordingly, I concur with the majority in the award of actual damages against all three defendants and the award of punitive damages against defendant Garvey. I respectfully disagree with the finding that there is justification for a judgment of punitive damages against defendants Smith and Burke. As to defendants Smith and Burke, I would reverse the judgment of punitive damages and remand for further consideration of this issue.
 
 
 
 *
 Judge Gibson became a member of this Court on March 30, 1982. At the time of the oral argument, he was a United States District Judge for the Western District of Missouri, sitting by designation
 
 
 [1]
 Plaintiffs' claims under § 1982 were dismissed prior to trial and are not before us on this appeal
 
 
 [2]
 An out-of-court settlement was reached with the landlords
 
 
 [3]
 The Hon. Diana E. Murphy, United States District Judge for the District of Minnesota
 
 
 [4]
 Near the end of its opinion, the Minnesota Supreme Court in Berg held that "the only lawful means to dispossess a tenant who has not abandoned nor voluntarily surrendered but who claims possession adversely to a landlord's claim of breach of a written lease is by resort to judicial process." 264 N.W.2d at 151. The court further held that its decision would have prospective effect only. Id
 
 
 [5]
 Minnesota Statute § 504.25 makes guilty of a misdemeanor "(a) landlord, agent of the landlord or person acting under the landlord's direction or control who unlawfully and intentionally removes or excludes a tenant from lands or tenements." (Emphasis ours)
 
 
 [6]
 We note the following facts that support a jury award of punitive damages:
 
 
 [1]
 Defendant police officers permitted plaintiffs to be evicted in the middle of the night while plaintiffs' young children were sleeping in the apartment and without knowing whether plaintiffs had a place to stay;
 
 
 [2]
 Plaintiffs testified that defendants used abusive language and called them "welfare bums."
 
 
 [3]
 Defendants made no effort to ascertain the legal propriety of the landlord's actions
 
 
 [1]
 With respect to the identification of the speaker, see DeLoach v. United States, 307 F.2d 653 (D.C.Cir.1962)