FILED
United States Court of Appeals
Tenth Circuit

December 5, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

EVAN BARK,

       Plaintiff-Appellant,

v.

DETECTIVE MARK CHACON;
SERGEANT DALE FOX; SERGEANT
MIKE FREEMAN; SERGEANT
JOSHUA BRENNER; OFFICER FELIX
JULIANO; OFFICER DANIEL MORK;
OFFICER CHRISTOPHER LAABS,

       Defendants-Appellees,

and

THE CITY OF COLORADO SPRINGS,
COLORADO; ANDREW HOLMES;
EL PASO COUNTY, COLORADO,

       Defendants.

No. 12-1169
(D.C. No. 1:10-CV-01570-RBJ-MJW)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Evan Bark filed this action under 42 U.S.C. § 1983 against the City of Colorado Springs, seven officers of the Colorado Springs Police Department (CSPD) in their individual capacities, El Paso County, and El Paso County Deputy Sheriff Andrew Holmes in his individual capacity. Mr. Bark appeals the grant of summary judgment in favor of the seven CSPD officers: defendants Chacon, Fox, Freeman, Brenner, Juliano, Mork, and Laabs, whom we shall refer to collectively as the defendants or individually as a defendant.[1] Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND[2]

This case arises out of an investigation of an armed robbery in a Colorado Springs business. On December 30, 2009, at about 7:00 p.m., CSPD officers were dispatched to the scene. One of the defendants, Officer Felix Juliano, was informed by dispatch that the suspects were two black males who had a shotgun and took money, purses, and cell phones. Two of the victims got into a car and attempted to follow what they thought was the robbers' car, but as it turned out, they were following Mr. Bark's car. Mr. Bark, who is white, just happened to be driving

---

[1]    The district court granted motions to dismiss filed by the City of Colorado Springs and El Paso County on the ground that Mr. Bark had not alleged sufficient facts to state a claim of municipal liability. The district court also granted summary judgment to Deputy Holmes on the claims against him. In his notice of appeal, Mr. Bark stated that he was not appealing either of those rulings.

[2]    We draw the facts largely from Mr. Bark's Amended Complaint, his deposition testimony, and admitted facts set forth in the defendants' summary judgment motions.

through the area at the time, accompanied by two of his employees. The two pursuing victims provided the license-plate number of Mr. Bark's car to Officer Juliano and reported that the car contained two black males and one white male. One of those two victims would later tell another defendant, Detective Mark Chacon, that she did not think the car they had followed was the correct one because it did not have tinted windows like the robbers' car and there was a white male in it, but this occurred after the events described below that gave rise to Mr. Bark's claims.

Later that evening, at 1:25 a.m. on December 31, at least ten law enforcement officers (all seven defendants, Deputy Holmes, and other El Paso County Sheriff's deputies) went to Mr. Bark's house. They did not have a search warrant. When Mr. Bark answered the door, six officers had their flashlights and guns pointed at him. Mr. Bark was wearing only pajama bottoms and was unarmed. He was ordered to get out of his house, and he and his dog ran out. Two of the defendants then dropped Mr. Bark to his knees in the snow, held his hands behind his back, patted him down, took his cell phone, and forced him to remain in that position for ten minutes in thirteen-degree weather. During that time, some of the officers, including some of the defendants, entered Mr. Bark's house and cleared the residence in a matter of a few seconds.

After this, Detective Chacon, who had been covering the back door, came around to the front. He told Mr. Bark they were conducting an investigation and wanted to speak with him inside his house because it was cold out. Mr. Bark agreed,

and the parties went inside.  Mr. Bark was asked to sit on his couch.  Two of the defendants sat next to Mr. Bark and would not let him get up or get any clothes.  When another defendant read him his *Miranda* rights, Mr. Bark said he wanted to call his mother, but defendants would not let him.  Mr. Bark then verbally waived his *Miranda* rights when they were read to him a second time.

Next, one of the defendants, other than Detective Chacon, told Mr. Bark that they were going to impound his vehicles unless he gave consent to search the house, his cell phone, and his vehicles.[3]  He gave written consent, but allegedly under duress.  Some defendants searched his vehicles but only let him watch the search of one of the vehicles, and after that he was again kept on his couch with one defendant on each side of him.

Some of the defendants also interrogated Mr. Bark about the armed robbery, using different teams of officers to try to intimidate him into confessing.  Detective Chacon informed Mr. Bark that witnesses had observed him committing the robbery; that his vehicle, with three people inside, had been identified by witnesses and observed on surveillance video; and that four witnesses had provided written statements identifying him as a perpetrator.  Mr. Bark did not confess, and the officers left at 3:03 a.m.  Mr. Bark immediately called his mother and had a

---

[3]     In his amended complaint, Mr. Bark alleged that it was Detective Chacon or another defendant who made this statement, *see* Aplt. App. at 16, but at his deposition, Mr. Bark clarified that it was not Detective Chacon but Deputy Holmes or another defendant, *see id.* at 461-63.

breakdown. While he was on the phone, two sheriff's deputies returned with clothing items that had been removed from Mr. Bark's house. Ultimately, no charges were filed against him, and on January 4, 2010, he was cleared of any involvement in the crime.

Mr. Bark then filed this § 1983 action. He claimed violations of his Fourth, Fifth, and Fourteenth Amendment rights based on unreasonable detention, false imprisonment, unlawful search, and unlawful seizure/arrest without probable cause. He alleged that the incident rendered him so emotionally distraught that he was unable to eat, had disrupted sleep, and was unable to work. He sought damages.

Six of the defendants (Fox, Freeman, Brenner, Juliano, Mork, and Laabs) filed a motion to dismiss, which the district court denied on the ground that although Mr. Bark had not alleged specifically what each individual officer had done to violate his rights, he had provided sufficient notice to the individual defendants of the claims asserted against them and the grounds on which those claims rested. Those six defendants then filed a motion for summary judgment, asserting lack of personal participation as to all six and qualified immunity as to Officer Fox. The district court concluded that summary judgment was warranted because Mr. Bark had provided no evidence of which officer did what. The record contained no deposition testimony from anyone other than Detective Chacon and Mr. Bark, Detective Chacon largely testified that he did not know what any other officer might have done, and there were no police reports that might have shed light on the matter.

Detective Chacon separately filed a motion for summary judgment asserting qualified immunity. The district court granted the motion, concluding that Mr. Bark could not establish a constitutional violation. Regarding the search, Mr. Bark admitted that it was not Detective Chacon who obtained his consent under duress. As to the seizure, there was no evidence Detective Chacon was present when Mr. Bark was forced to his knees in the snow and searched. Further, the court observed that the detention lasted for approximately ninety minutes and consisted of Mr. Bark sitting on his couch voluntarily answering questions without handcuffs or other restraints. The court concluded that detaining Mr. Bark on his couch did not amount to a constitutional violation because the Fourth Amendment permits the use of "'some degree of physical coercion or threat thereof'" in effecting "'an arrest or investigatory stop.'" Aplt. App. at 560 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

With respect to Detective Chacon's use of "strategic deception" in telling Mr. Bark that eyewitnesses had seen him and that his car was seen on a surveillance tape—neither of which was true—the district court concluded that it did not violate Mr. Bark's Fifth and Fourteenth Amendment rights to due process because it did not amount to coercion to speak. In support, the court cited *Illinois v. Perkins*, 496 U.S. 292, 297 (1990), for its statement that "[p]loys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda*'s concerns."

The district court then considered Mr. Bark's Fifth Amendment self-incrimination claim, which it characterized as consisting of Detective Chacon's questioning him without access to an attorney, lying to him, and attempting to obtain a confession. The court found no violation because the Fifth Amendment's protection applies in a "case," and under *Chavez v. Martinez*, 538 U.S. 760, 767 (2003), "police questioning does not constitute a 'case.'" Nor does "compulsive questioning" violate "the Constitution." *Id.* Mr. Bark was Mirandized, the court noted, and he agreed to answer questions.

Finally, the court concluded that there was no evidence that Detective Chacon removed any items from Mr. Bark's house. Detective Chacon denied it, and Mr. Bark testified that sheriff's deputies, not CSPD officers, returned items to him.

## II. DISCUSSION

"We review the district court's grant of summary judgment de novo, applying the same standards that the district court should have applied." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011) (alteration and internal quotation marks omitted). A "grant of summary judgment must be affirmed 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "[W]e consider the evidence in the light most favorable to the non-moving party," but "unsupported conclusory allegations do not create a genuine issue of fact." *Id.* (alteration and internal quotation marks omitted).

We begin with the district court's handling of the claims against defendants Fox, Freeman, Brenner, Juliano, Mork, and Laabs. Mr. Bark claims he cannot individually identify what each officer did because it was dark, he was frightened, and only Detective Chacon identified himself. Nonetheless, he claims their mere presence at the scene is sufficient to survive summary judgment. We disagree. A plaintiff in a § 1983 case has the burden to make just such an identification. In *Robbins v. Oklahoma*, we explained that when a § 1983 plaintiff includes a "government agency and a number of government actors sued in their individual capacities," then "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." 519 F.3d 1242, 1249-50 (10th Cir. 2008). When a plaintiff instead uses "either the collective term 'Defendants' or a list of defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id.* at 1250.

Unlike *Robbins*, Mr. Bark's action was not dismissed at the pleading stage but instead proceeded through discovery and onto summary judgment. Nonetheless, despite the opportunity to take discovery, Mr. Bark did not provide any evidence that might have shed some light on what role Fox, Freeman, Brenner, Juliano, Mork, and Laabs played in the matter. As the district court noted, the only deposition testimony

- 8 -

he provided was his own and that of Detective Chacon. The record does not indicate that Mr. Bark deposed or pursued other discovery (interrogatories, requests for admission) from the other six defendants. Hence, we conclude that, although his complaint was permitted to proceed past the dismissal stage, he ultimately did not meet his burden of specifying what each of these six defendants did. Moreover, we are unpersuaded by his argument that those six defendants may be held liable by virtue of their mere presence at the scene and their failure to stop any of the alleged constitutional violations committed by their fellow officers. According to Mr. Bark's own allegations, not every officer was in a position to observe every alleged constitutional violation, which distinguishes this case from the extra-circuit cases he relies on.[4] Hence, the lack of individual identification also plagues Mr. Bark's failure-to-intervene theory.

Turning to the claims against Detective Chacon, we affirm the district court's judgment for substantially the same reasons stated in the court's order granting summary judgment. Mr. Bark complains that the district court ignored his claim that Detective Chacon entered his house "without an invitation, without exigent circumstances and without a search warrant." Aplt. Br. at 18. However, there is no

---

[4] Those cases are *Priester v. City of Riviera Beach*, 208 F.3d 919 (11th Cir. 2000), and *Pellowski v. Burke*, 686 F.2d 631 (8th Cir. 1982). Mr. Bark also relies on *Demetrius v. Marsh*, 560 F. Supp. 1157 (E.D. Pa. 1983), in support of his failure-to-intervene theory, but that decision concerned the sufficiency of the complaint, not whether summary judgment was in order, and it is therefore unpersuasive. As noted, Mr. Bark's amended complaint survived a motion to dismiss filed by defendants Fox, Freeman, Brenner, Juliano, Mork, and Laabs.

dispute that Mr. Bark agreed to let Detective Chacon into his house to conduct an investigation. Mr. Bark now claims there is a disputed factual issue regarding whether that agreement was under duress given the alternative he faced—remain outside in freezing temperatures wearing only pajama bottoms. However, Mr. Bark admitted several key facts Detective Chacon set forth in his motion for summary judgment: that he "introduced himself, advised Mr. Bark that they were conducting an investigation, and due to it being cold out would like to speak with Mr. Bark inside of the residence," Aplt. App. at 70, ¶ 31, and that "Mr. Bark agreed to speak with the officers inside the residence." *Id.*, ¶ 32. *See also id.* at 269, ¶¶ 31-32 (Mr. Bark's admission of these facts). And we fail to see where Mr. Bark alleged or argued in the district court that he consented to Detective Chacon's entry under duress. Hence, Mr. Bark has forfeited this theory. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). Although we may review forfeited theories for plain error, Mr. Bark's failure to argue for plain-error review "surely marks the end of the road for an argument for reversal not first presented to the district court." *Id.* at 1130-31.

In sum, we agree with the district court's assessment of "[t]he problem with this case[:] Det[ective] Chacon is the one individual whom [Mr. Bark] can identify, but he does not have evidence that creates a triable issue of fact regarding Det[ective]

Chacon's actions. There might have been improper conduct by others, but they haven't been, and apparently cannot be, identified." Aplt. App. at 562.

The judgment of the district court is AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge